**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| CELSO VAZ GABRIEL d/b/a AURA VIDEO AND ADVERTISING, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) **Civil Action No.** ) **13-12787-NMG** |
| SUPERSTATION MEDIA, INC., JOAQUIM CAVAIGNAC and TV GLOBO INTERNACIONAL, | ) ) ) |
| Defendants. | ) ) ) ) |
| SUPERSTATION MEDIA, INC. and JOAQUIM CAVAIGNAC, | ) ) ) ) |
| Third party plaintiffs, | ) ) |
| v. | ) ) |
| PATRICIA VAZ GABRIEL, | ) ) ) |
| Third party defendant. | ) ) |

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises out of a dispute between an advertising

broker and an advertising agent about who has the right to

represent businesses that seek to advertise on a Portuguese-

language network. Plaintiff Celso Vaz Gabriel ("Gabriel" or

"plaintiff"), who does business as Aura Video and Advertising

("Aura"), filed the instant action against defendants

Superstation Media, Inc. ("Superstation"), Joaquim Caravaignac

-1-

("Caravaignac") and TV Globo Internacional ("TV Globo").
Plaintiff alleges that Superstation and Caravaignac breached an
implied contract and defamed him and that all three defendants
committed various other torts against him.  Superstation and
Caravaignac have denied the allegations, counterclaimed against
plaintiff and filed a third party complaint against plaintiff's
wife, Patricia Vaz Gabriel ("Ms. Gabriel").

Pending before the Court are plaintiff's motion for a
preliminary injunction and TV Globo's motion to dismiss for
failure to state a claim upon which relief can be granted.

## I.  **Background**

TV Globo is a Delaware corporation that broadcasts
programming in Portuguese in the United States and elsewhere.

Superstation is a Florida corporation that acts as a broker
for TV Globo with respect to businesses that choose to advertise
on TV Globo and, in some cases, the advertising agents that
represent those businesses.[1]  Superstation claims to be the
exclusive representative of TV Globo in the United States but
also an independent contractor.  Cavaignac is its president.

---

[1] Black's Law Dictionary (7th ed. 1999) defines "agent" as "[o]ne
who is authorized to act for or in place of another; a
representative" and "broker" as "[a]n agent who acts as an
intermediary or negotiator, especially between prospective
buyers and sellers."  The Court will refer to Superstation as a
"broker" and Gabriel as an "agent" based on its understanding of
their business models at this stage of the case.  Its use of
those terms is for convenience only and has no bearing upon
liability or any other legal issue in this case.

Gabriel, doing business as Aura, produces advertisements
and acts as an advertising agent for his clients, which are
mostly businesses that cater to the Portuguese-speaking,
Brazilian population of Massachusetts and New Hampshire.[2]
Gabriel produces (i.e. films) advertisements for his clients and
represents them in some capacity in their dealings with
Superstation.  For example, he obtains from each client a signed
letter explaining that Aura is authorized to represent the
client, faxes such letters to Superstation and registers clients
on Superstation's website where he lists Aura as the client's
agent.  Superstation emails directly to the clients a user name
and password but apparently Gabriel requires his clients to
provide him with that information so that he can log in to
Superstation's website on their behalf.[3]  Clients pay
Superstation directly for the advertising time on TV Globo,
however, and Superstation remits a percentage of such payments
to Gabriel (and other agents) on a monthly basis.  Superstation
pays another portion to TV Globo for the advertising and retains

---

[2] In his submissions to the Court, Gabriel refers to the
businesses with whom he works as both "clients" and "customers"
and to those businesses collectively both as his "customer list"
and "client base".  To be consistent, the Court will use the
terms "clients" and "client list".

[3] Although the parties dispute whether certain businesses are
"clients" of Superstation or of Gabriel or of both, the Court
takes no position at this stage of the case and will simply
refer to such businesses as "mutual clients".

-3-

the balance as its commission.  There is no written contract
between Gabriel and Superstation.

In 2013, Superstation learned that Gabriel had allegedly
been demanding and accepting payments due to Superstation from
his clients, and then paying Superstation out of his personal
account when Superstation demanded the money, rather than
instructing clients to pay Superstation directly.  Superstation
also alleges that it was informed by a former client of Gabriel
that it had paid Gabriel for a commercial that never aired.
Furthermore, Superstation contends that Gabriel and his wife
have, on multiple occasions, misrepresented to clients that they
are required to use Aura as their agent if they choose to
advertise on TV Globo.  Finally, according to Superstation, Ms.
Gabriel has been verbally abusive to Superstation's employees on
multiple occasions when asked about missing payments.

Superstation's attorney sent a letter to Gabriel in August,
2013, requesting that plaintiff and his wife communicate with
Superstation only by email in the future due to Ms. Gabriel's
behavior.  It also reminded them that they were not authorized
to receive payments intended for Superstation or TV Globo or to
act or speak on behalf of Superstation or TV Globo.  The letter
also notes that Superstation is TV Globo's "exclusive
advertising representative for the United States and Canada."

-4-

Ms. Gabriel responded by sending an email to mutual clients shortly thereafter accusing Cavaignac of being dishonest and of committing crimes in his capacity as TV Globo's representative. Gabriel alleges that Cavaignac contacted several of Gabriel's clients in August or September, 2013, directly and offered them a new advertising package.  Gabriel avers that he had previously instructed Cavaignac that he did not want his clients to deal directly with Cavaignac or buy the subject advertising package because he did not think the terms were favorable.  He also claims that Cavaignac slandered him in a deliberate attempt to induce or intimidate his clients into buying advertising packages directly from Superstation rather than through Aura. In particular, he alleges that Cavaignac told his clients that Gabriel was investing their payments in "speculative ventures".

In a September, 2013 letter, Superstation's attorney notified Gabriel that Superstation and TV Globo would honor existing contracts but would not enter into any future contracts with clients who were represented by Gabriel.  The letter accused Gabriel and his wife of slandering Cavaignac and Superstation.  Superstation also informed mutual clients that it would not enter into new contracts involving Gabriel as the agent but would continue to air commercials under existing contracts negotiated by Gabriel until such contracts expired. At the motion hearing in this case, Superstation's counsel

-5-

clarified that it would continue to accept new commercials that were produced and shot by Gabriel and therefore clients could continue to work with Gabriel so long as Gabriel did not contact Superstation on their behalf about scheduling.

Gabriel, through counsel, sent Superstation and Cavaignac a cease and desist letter at about that time. Shortly thereafter, Ms. Gabriel sent an email to mutual clients asserting that Superstation is not authorized to communicate directly with Aura's clients without Aura's express written consent. Superstation avers that mutual clients who received that email have contacted Superstation to express their desire to continue to work with it in order to place their advertisements on TV Globo and no client has asked Superstation to communicate with it solely through Aura.

## II.  **Procedural history**

Gabriel filed his Complaint in the Massachusetts Superior Court for Essex County in October, 2013. He alleges that Superstation breached an implied contract (Count 1) and the covenant of good faith and fair dealing (Count 2) and that Cavaignac defamed him by telling clients that he misappropriated funds (Count 3). He also claims that all defendants were unjustly enriched by misappropriating his client list (Count 4), intentionally interfered with his advantageous business

-6-

relationships (Count 5) and engaged in unfair or deceptive business practices in violation of M.G.L. c. 93A (Count 6).

Defendants removed the case to this Court on diversity grounds in November, 2013. Shortly thereafter, Gabriel moved for a preliminary injunction against Superstation and Cavaignac and they, in turn, filed a Counterclaim against Gabriel and a Third Party Complaint against Ms. Gabriel, alleging defamation, intentional interference with contractual relationships and violations of M.G.L. c. 93A. TV Globo moved to dismiss the claims against it in December, 2013.

## III. **Plaintiff's motion for a preliminary injunction**

Gabriel has moved for a preliminary injunction that would require Superstation and Cavaignac 1) to refrain from communicating with any of plaintiff's clients without plaintiff's consent and participation and 2) to continue to "perform" under a purported implied contract with plaintiff.

### A.   **Legal standard**

A preliminary injunction is an "extraordinary and drastic remedy [that] is never awarded as of right." Munaf v. Green, 553 U.S. 674, 689-90 (2008) (internal quotation marks and citations omitted). In order to obtain a preliminary injunction, the moving party must establish

> that [it] is likely to succeed on the merits, that
> [it] is likely to suffer irreparable harm in the
> absence of preliminary relief, that the balance of

-7-

equities tips in [its] favor, and that an injunction
is in the public interest.

Voices of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645
F.3d 26, 32 (1st Cir. 2011) (quoting Winter v. Natural Res. Def.
Council, Inc., 555 U.S. 7, 129 (2008)).

## B.   Application

Gabriel has not carried his burden of establishing that he
is entitled to preliminary injunctive relief and his motion will
therefore be denied.  First, the Court is not convinced that he
is likely to prevail on the merits of his claims because
apparently 1) Superstation has plausible reasons for ceasing to
work with him and informing mutual clients accordingly and 2)
there is no enforceable contract between the parties.
Furthermore, even if Gabriel ultimately prevails on his claims,
the Court is not convinced that any harm cannot be compensated
with money damages based on expected profits over time from
representing clients before Superstation.  Finally, it would be
unduly burdensome to Superstation and not in the public interest
to order specific performance on an unsubstantiated oral
contract or to forbid Superstation from communicating with its
own clients with whom it has ongoing business relationships.

## IV.   TV Globo's motion to dismiss

TV Globo has also moved to dismiss the claims against it
for failure to state a claim upon which relief can be granted.

It contends that Gabriel has not alleged any facts that would
subject it to direct liability on the claims alleged and denies
that it may be held vicariously liable for the actions of
Superstation and Cavaignac.

## A.    Legal standard

To survive a motion to dismiss brought under Fed. R. Civ.
P. 12(b)(6), a complaint must contain sufficient factual matter,
accepted as true, to "state a claim to relief that is plausible
on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007).  In considering the merits of a motion to dismiss, the
Court must accept all factual allegations in the complaint as
true and draw all reasonable inferences in the plaintiff's
favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st
Cir. 2000).  Yet "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements," do
not suffice to state a cause of action. Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009). Accordingly, a complaint does not state a
claim for relief where the well-pled facts fail to warrant an
inference of anything more than the mere possibility of
misconduct. Id. at 679.

## B.    Application

The Court agrees with TV Globo that Gabriel has not alleged
facts that would suffice to hold TV Globo directly liable for
any of the claims against it.  It is a closer question, however,

-9-

whether Gabriel has stated a plausible claim that Superstation
and Cavaignac are agents of TV Globo such that TV Globo may be
held vicariously liable for their allegedly tortious conduct.

An agency relationship is created when there is mutual
consent, express or implied, that the agent is authorized to act
on behalf of and for the benefit of the principal, subject to
the principal's control. Theos & Sons, Inc. v. Mack Trucks,
Inc., 729 N.E.2d 1113, 1119 (Mass. 2000). Under Massachusetts
law, proof of agency is normally a question for the finder of
fact. White's Farm Dairy, Inc. v. De Laval Separator Co., 433
F.2d 63, 66 (1st Cir. 1970). Moreover, even if an agency
relationship exists, a principal is vicariously liable only if
the conduct of the agent

> is the kind [the agent] is employed to perform; if it
> occurs substantially within the authorized time and
> space limits; and if it is motivated, at least in
> part, by a purpose to serve the [principal].

Sarvis v. Bos. Safe Deposit & Trust Co., 711 N.E.2d 911, 920
(Mass. App. Ct. 1999) (quoting Wang Labs., Inc. v. Bus.
Incentives, Inc., 501 N.E.2d 1163, 1166 (Mass. 1986)).

The Court finds that, even if Gabriel is correct that
Superstation is an agent of TV Globo, Gabriel has not made any
factual allegations that would tend to show that Superstation
was acting within the scope of that agency when it allegedly
misappropriated his client list by trying to persuade Gabriel's

clients to bypass him and work directly with Superstation.  As a result, his claims against TV Globo will be dismissed.  See Roggio v. City of Gardner, No. 10-40076, 2011 WL 1303141, at *6-7 (D. Mass. Mar. 30, 2011) (allowing motion to dismiss when plaintiff failed to plead facts that the alleged conduct was of the kind expected of or commonly performed by agents of the principal).

## ORDER

In accordance with the foregoing,

1)   Plaintiff's motion for a preliminary injunction
     (Docket No. 9) is **DENIED**; and

2)   Defendant TV Globo's motion to dismiss (Docket No. 28)
     is **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated February 7 , 2014

-11-